# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TAHRI ARLANDIS SMITH,

      Defendant-Appellant.

UNPUBLISHED
February 19, 2015

No. 318383
Wayne Circuit Court
LC No. 13-004750-FC

Before: SERVITTO, P.J., and STEPHENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant Tahri Arlandis Smith appeals by right his jury convictions of first-degree premeditated murder, MCL 750.316(1)(a), first-degree felony murder, MCL 750.316(1)(b), assault with intent to commit murder, MCL 750.83, first-degree home invasion, MCL 750.110a, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced Smith to serve life in prison for the murder convictions, to serve 25 to 50 years in prison for the assault conviction, to serve 10 to 20 years in prison for the home invasion conviction, and to serve two years in prison for the felony-firearm conviction. Because we conclude there were no errors warranting relief, we affirm.

## I. BASIC FACTS

The jury convicted Smith on the basis of evidence that, in April 2013, Smith shot and killed Maria Zavala with a single shot to her head and then shot Zavala's neighbor, Angela Lampkin, several times. Zavala and Lampkin lived in a house in Detroit that had been divided into two flats. Zavala occupied the upstairs unit with her boyfriend, Kenneth Owens. According to the prosecution, Smith knew Zavala and Owens and went to their flat with three other men to rob them, but ended up killing Zavala and tried to kill Lampkin because she could identify him.

At the time of the shootings, Owens was riding a bus to Indiana and was talking to Zavala on his cell phone when Smith arrived. Owens testified that Zavala told him that Smith was present with three other men armed with guns. Owens heard someone ask Zavala for money and then heard Zavala drop her phone. Lampkin, who was being held downstairs at gunpoint, heard a single gunshot and the sound of something dropping. Owens called 911, but the call went to a local dispatcher in Ohio who could not assist him. Owens then contacted Dealvis Young and Gregory Hill (Lampkin's boyfriend), for assistance. Hill and Lampkin had already called 911 in Detroit at 12:17 a.m., which was the same time that the dispatcher in Ohio received the call from

-1-

Owens. Lampkin testified that after Smith came down from Zavala's unit with the other men, he admitted he shot Zavala and then proceeded to shoot her.

## II. INEFFECTIVE ASSISTANCE

Smith argues on appeal that his trial lawyer did not provide him with effective assistance. Because the trial court did not hold an evidentiary hearing on this claim of error, we review this claim of error for mistakes that are apparent on the record alone. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). In order to establish his claim, Smith must show that his trial lawyer's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and that, but for the unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), lv denied in relevant part 493 Mich 864.

Smith first argues that it was unreasonable for his lawyer to waive Young as a witness. The decision to call a particular witness is a matter of trial strategy. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). This Court presumes that the defendant's trial lawyer acted competently. *Gioglio*, 296 Mich at 22. "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did." *Id.* (quotation marks and citation omitted). If this Court concludes that there might have been a legitimate strategic reason for the lawyer's act or omission after reviewing the range of possible reasons for proceeding as he or she did, this Court must conclude that the act or omission fell within the range of reasonable professional conduct. *Id.* at 22-23.

The prosecutor originally endorsed Young as a witness, but indicated that she would not be calling him at trial. She nevertheless agreed to ensure that Young was available for the defense. Smith's trial lawyer expressed his belief that Young's testimony would be hostile to the defense, but stated that he wanted Young to remain present for trial. Smith's lawyer later informed the court that, after conferring with Smith, they had decided not to call Young as a witness; at that point, the trial court excused Young.

On this record, we must conclude that Smith's lawyer chose not to call Young as a matter of reasonable trial strategy. It is apparent that defense counsel had the opportunity to learn the substance of Young's testimony, and there is no basis for concluding that Young's testimony would have been favorable to the defense. Testimony showed that Owens phoned Young and asked him to go to the victims' house after his call with Zavala. The prosecutor advised defense counsel on the record that Young had reported seeing Smith leaving the victims' house. Considering that Owens' testimony provided an explanation for Young's presence at the house, and the representation that Young could establish Smith's presence at the time of the shooting, a reasonable lawyer could conclude that it would not be beneficial to call Young. Accordingly, Smith has not overcome the presumption that the decision was a matter of reasonable trial strategy. *Gioglio*, 296 Mich at 22-23. Although Smith argues that the case should be remanded for an evidentiary hearing on this issue, he has not offered any proof showing that Young would have provided testimony favorable to the defense. Therefore, he has not established grounds for a remand.

Smith next argues that his lawyer was ineffective for not honoring Smith's request to testify at trial. A criminal defendant has a constitutional right to testify. *People v Simmons*, 140 Mich App 681, 683-684; 364 NW2d 783 (1985). While the decision whether to call the defendant to testify is generally a matter of trial strategy, *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986), the defendant retains the ultimate authority to decide whether to testify. See *Jones v Barnes*, 463 US 745, 751; 103 S Ct 3308; 77 L Ed 2d 987 (1983). Thus, the defendant has the right to testify even if counsel disagrees with that decision. *Simmons*, 140 Mich App at 685. Counsel has the responsibility to advise the defendant "of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide," and violation of that responsibility can constitute ineffective assistance of counsel. *United States v Teague*, 953 F2d 1525, 1533-1535 (CA 11, 1992). Consistent with these principles, the record at trial discloses that Smith's lawyer met with him during trial, advised him of his constitutional right to testify, discussed the possible advantages and disadvantages of having him testify, and left the ultimate decision whether to testify with Smith. Upon questioning by the trial court, Smith acknowledged that, after discussing the matter with his lawyer, it was "not [his] desire to take the stand." On this record, we conclude that Smith's argument is without any merit.

Smith next argues that his lawyer was ineffective for stipulating that the times listed for some of the telephone calls between Owens and Zavala might have been off by one hour due to the effect of daylight savings time. Smith maintains that this stipulation allowed the jury to ignore discrepancies in the prosecutor's timeline. The record shows that Smith's lawyer withdrew the stipulation and the trial court instructed the jury not to follow it. A jury is presumed to have followed the court's instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Further, defense counsel addressed the timeline issue at length during closing argument and explained why he believed that there was a discrepancy in the timing of Owens' calls. The effect of withdrawing the stipulation allowed counsel to argue that the telephone records for Owens and Zavala were accurate. In sum, to the extent that defense counsel's original stipulation was objectively unreasonable, Smith was not prejudiced in light of the fact that the stipulation was later withdrawn, the jury was instructed not to follow it, and counsel was able to argue that the listed times for various phone calls created discrepancies with the prosecutor's timeline. Smith also argues that the record should be further developed on this issue at an evidentiary hearing. But because he has not presented any offer of proof indicating what additional facts could be established, he has not demonstrated that an evidentiary hearing is necessary.

Smith has not demonstrated that his trial lawyer provided ineffective assistance.

## III. INVESTIGATOR

Contrary to Smith's assertion, the record discloses that the trial court appointed Joseph Bruce as a defense investigator and that Bruce assisted in investigating the case for trial. Thus, there is no merit to this issue. To the extent Smith argues that a new investigator should be appointed, he has not identified any new evidence or facts that need to be investigated. His argument is based on pure speculation and does not warrant relief. See *People v Johnson*, 245 Mich App 243, 260; 631 NW2d 1 (2001).

## IV. CORRECTION OF THE JUDGMENT OF SENTENCE

The jury convicted Smith of alternative counts of first-degree premeditated murder, MCL 750.316(1)(a), and first-degree felony murder, MCL 750.316(1)(b). He now argues that because his convictions arise from the death of a single victim, this case should be remanded for correction of the judgment of sentence to reflect a single conviction and single life sentence for first-degree murder. Smith correctly observes that multiple murder convictions and sentences arising from the death of a single victim violate the double jeopardy. *People v Orlewicz*, 293 Mich App 96, 112; 809 NW2d 194 (2011). However, the trial court addressed this at sentencing and clarified that the alternative murder theories would be merged into a single conviction and sentence for murder. The trial court indicated on the judgment of sentence that Smith's two convictions for murder were "merged." A review of the Department of Corrections's Offender Tracking Information System website confirms that Smith is listed as having only one conviction and one life sentence for first-degree murder. Accordingly, Smith has not demonstrated a need to have his sentence corrected.

There were no errors warranting relief.

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Michael J. Kelly