# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 23, 2015

Plaintiff-Appellee,

v

No. 320998
Wayne Circuit Court
LC No. 13-020467-FH

THOMAS PATRICK DOUGHTERY,

Defendant-Appellant.

Before: STEPHENS, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of assault with intent to do great bodily harm less than murder, MCL 750.84. Defendant was sentenced to three years of probation for his conviction. For the reasons set forth in this opinion, we affirm the conviction and sentence of defendant.

This appeal arises out of an altercation which occurred between defendant and Richard Shuler at North Ridge Church ("the church") in Plymouth Township. Shuler was in his vehicle in the church parking lot waiting to pick up his daughter after a church service. As Shuler waited in the line of cars near the entrance of the church to pick up his daughter, defendant backed his vehicle out of a handicapped parking space and "bumped" into Shuler's right tire. Shuler and defendant got out of their respective vehicles and looked at Shuler's tire. According to Shuler, "No damage was done. Nobody was hurt." Defendant wanted to exchange information, but Shuler "didn't see any reason for that" because there was no damage and nobody was injured. Defendant became upset and began "hollering" that Shuler had to wait for the police to arrive.

According to witness testimony, Shuler got back into his vehicle, drove around the vehicles that were in line, and parked his vehicle next to the church door. Defendant also got in his vehicle and "pulled up" behind Shuler. Defendant got out of his car, approached Shuler's vehicle, and began "hollering" and "screaming" at him. As a result, Shuler testified that he drove to the "farthest spot in the parking lot" so he could make a phone call. As he was trying to make a phone call, defendant "pulled up" behind him again. Shuler looked in his rear view mirror and saw defendant standing outside of defendant's car, reaching into the backseat.

At that point, according to Shuler, he got out of his vehicle, walked to defendant's vehicle, and "held the [rear driver's side] door" to keep "it from coming open" as defendant was reaching in the backseat, he pushed the door and Shuler fell backward. Defendant then grabbed

-1-

a metal cane[1] from the back seat and began swinging the cane at Shuler. Defendant hit Shuler's leg, causing him to fall down. After he fell to the ground, defendant hit him with the cane in the leg again. While on the ground, Shuler was trying to protect his head with his arms. Defendant swung the cane again, and the cane "bounced off" Shuler's arm and "broke two ribs." Defendant beat him with the cane five or six more times on his arms and back.

Defendant claimed that he beat Shuler with his cane in self-defense. According to defendant, as he was reaching for his pad of paper and pen from the backseat of his car, Shuler "slammed" the car door against the side of defendant's head and his head was "pinned" between the door and the "metal seal" of the car. Defendant testified he thought he "was gonna die." According to defendant's testimony, he tried to "back out" but Shuler pushed the door against defendant's head even harder. Shuler then pushed his hand behind defendant's neck and pushed defendant's head down. Because defendant was fearful, he took his cane and "swished it back and hit [Shuler's] leg." Defendant continued to struggle to free himself and continued to swing his cane. The third time defendant hit Shuler with his cane, he "backed out" and the car door opened. Shuler fell on the ground and said, "I give up. I give up." At that point, defendant stopped hitting Shuler.

While the trial was proceeding, it was brought to the attention of the trial court that a person who had been watching the trial was associated with one of the jurors. The trial court questioned the individual and told them not discuss anything they had heard with the juror. The trial court then asked of the person, "Lips are sealed, right?" The person responded: "Right."

Additionally, during trial, defendant sought to admit expert psychiatric testimony from Dr. Warwick David Armstrong to discuss defendant's mental state at the time of the incident. The proffered testimony would establish that defendant has post-traumatic stress disorder which "could potentially cause [defendant] to react differently or maybe a little faster than a normal person." Defendant claimed Armstrong's testimony would help explain defendant's theory of self-defense. The prosecution objected to the introduction of the testimony on the grounds that the testimony was not relevant and that a psychiatrist may not render an opinion regarding whether an individual defendant suffers from a syndrome or if he acted pursuant to that syndrome.

After hearing arguments for both parties, the trial court ruled, in part:

But I, I will not let a psychiatrist come in and tell us what his intent was or tell us that he has some kind of post traumatic stress syndrome because it has no bearing. That has no bearing on whether or not he committed the crime that he's charged with, or whether or not he had the requisite intent. So, so that's why I indicated that I would not allow the psychiatrist.

---

[1] Defendant uses a cane to walk as a result of multiple knee surgeries.

Defendant was convicted and sentenced as stated above. This appeal then ensued.

On appeal, defendant first contends that he was denied his right to present a defense when the trial court excluded testimony from Dr. Armstrong. To preserve the issue that defendant was denied the right to present a defense, "a party must object below and specify the same ground for objection that it argues on appeal." *People v Bosca*, __ Mich App __, __; __ NW2d __ (2015); slip op at 21, citing *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant failed to object to the trial court's decision to exclude Armstrong's testimony on the ground that it would violate defendant's right to present a defense. Therefore, the issue is not preserved. This Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order for defendant to establish plain error, he must show that (1) an error occurred, (2) the error was plain, clear or obvious, (3) and the plain error affected substantial rights. *Id*. The third prong requires a showing of prejudice. *Id*.

As previously stated, defendant sought to admit expert psychiatric testimony from Armstrong to discuss defendant's mental state at the time of the incident and to discuss that defendant has post-traumatic stress disorder which "could potentially cause [defendant] to react differently or maybe a little faster than a normal person." Defendant claimed Armstrong's testimony would help explain defendant's theory of self-defense. The trial court denied introduction of the testimony for the reasons stated above. We find no error in the trial court's ruling.

The Sixth Amendment of the United States Constitution provides that a criminal defendant has the right "to have compulsory process for obtaining witnesses in his favor." *People v Kowalski*, 492 Mich 106, 139; 821 NW2d 14 (2012). This right has been incorporated to the states through the Fourteenth Amendment. *Kowalski*, 492 Mich at 139, citing *Washington v Texas*, 388 US 14, 18; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Kowalski*, 492 Mich at 139, quoting *Washington*, 388 US at 19. However, the right to present a defense is not an absolute right and a defendant must still comply with "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Kowalski*, 492 Mich at 139, quoting *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. This Court, in *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011), was required to determine if psychiatric testimony was relevant to a defendant's claim of self-defense. In *Orlewicz*, the defendant was convicted of first-degree premeditated murder, first-degree felony murder, and mutilation of a dead body. *Id*. at 99. The prosecution's theory of the case was that the "defendant did not like the victim," was upset that the victim refused to repay a debt to the defendant, and that the defendant devised a plan to commit the "perfect crime" of killing the victim by leaving no evidence. *Id*. The defendant contended that he was coerced into involvement in a robbery scheme devised by the victim and that when the plan failed, the victim threatened the defendant's life. *Id*. Defendant claimed that,

upon being threatened, he killed the victim in self-defense. *Id*. The jury ultimately found the prosecution's case more credible. *Id*.

On appeal, Orlewicz argued that he was denied his right to present a defense because the trial court excluded psychiatric testimony that the defendant argued was relevant to his self-defense claim. *Id*. at 101. The *Orlewicz* Court noted that self-defense requires an honest and reasonable belief of imminent death or harm. *Id*. at 102, citing MCL 780.972. The *Orlewicz* Court also recognized that "a defendant's psychological idiosyncrasies may, at least in theory, be relevant to the reasonableness of the defendant's belief that he or she was in danger." *Id*. However, this Court concluded that the proffered psychiatric evidence was not relevant because the case "featured two starkly contrasting, and largely incompatible narratives of what *factually* transpired before the killing." *Id*. Under the prosecution's theory, "there was no possible way defendant could have been legitimately defending himself," and under the defendant's version of events, there was "absolutely no leap of logic of faith required to conclude that it is objectively reasonable to fear for one's life" when the victim was pointing a gun at the defendant and threatening to shoot him. *Id*. at 102-103. The *Orlewicz* Court held that because the defendant's self-defense claim depended purely on which of the two factual scenarios actually happened, the psychiatric testimony would only have been relevant if it had some bearing on which scenario occurred. *Id*. at 103. Ultimately, the psychiatric testimony the defendant sought to admit was not relevant as it "would have cast no light whatsoever on which of the two versions of events was the more likely." *Id*.

Similar to *Orlewicz*, this case features two contrasting and incompatible narratives of what *factually* transpired before the assault. The prosecution's theory was that defendant attacked Shuler while he tried to detain defendant in his car by holding the rear driver's side door shut. Defendant's theory was that Shuler "slammed" the car door on his head, which prompted defendant to hit Shuler with his cane because he was fearful for his life. Under the prosecution's theory, there was no possible way defendant could have been legitimately defending himself, and under the defendant's theory, there was "absolutely no leap of logic of faith" required to conclude that it is objectively reasonable to fear harm when Shuler "slammed" the car door on defendant's head. *Id*. Similar to *Orlewicz*, defendant's self-defense claim depended entirely on which of the two factual scenarios actually happened. Armstrong's testimony that defendant suffered from post-traumatic stress syndrome and that the syndrome "could potentially cause [defendant] to react differently or maybe a little faster than a normal person" "would have cast no light whatsoever on which of the two versions of events was the more likely." *Orlewicz*, 293 Mich App at 103. Therefore, the trial court did not err in concluding that the psychiatric testimony of Armstrong was not relevant pursuant to MRE 401 and *Orlewicz*.

Additionally, in *People v Wilson*, 194 Mich App 599, 605; 487 NW2d 822 (1992), this Court held that "an expert is qualified only to render an opinion regarding the 'syndrome' and symptoms that manifest from it, not whether the individual defendant suffers from the syndrome or acted pursuant to it." Because Armstrong's testimony that the syndrome "could potentially cause [defendant] to react differently or maybe a little faster than a normal person" would be an opinion regarding whether defendant suffered from post-traumatic stress syndrome and if he acted pursuant to it, the trial court properly excluded the evidence. Because the right to present a defense is not an absolute right, and a defendant must still comply with "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of

guilt and innocence," *Kowalski*, 492 Mich at 139, quoting *Hayes*, 421 Mich at 279, defendant was not denied the right to present a defense. Therefore, defendant is not entitled to relief on this issue.

Defendant next asserts that the trial court erred by not exhausting every possible effort to protect his right to an impartial jury. "For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defense counsel did not raise the issue that the trial court's actions were insufficient at trial. Thus, the issue is not preserved. This Court reviews unpreserved issues for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

As previously stated, the trial court discovered that an individual seated in the courtroom during the trial was associated with one of the jurors. After the parties and the trial court had a discussion on the record, outside the presence of the jury, the following conversation took place:

> *THE COURT*: We have a young man in the courtroom.
>
> Are you with one of the jurors?
>
> *PERSON IN THE GALLERY*: Yes.
>
> *THE COURT*: Okay. Well, that's great. I mean I -- but you have had an opportunity to overhear some conversations outside the presence of the jury which the jury cannot hear. And I just -- I probably don't need to tell you this, but just in case, please do not reveal the contents of anything that you've just heard here to the juror that you're connected with. I'm not -- at least until there's a verdict.
>
> And I'm not sure that you would even have a chance to talk to her before the verdict comes out anyway. But just in case, okay.
>
> *PERSON IN THE GALLERY*: Okay.
>
> *THE COURT*: So just lips sealed, right?
>
> *PERSON IN THE GALLERY*: Right.
>
> *THE COURT*: Okay. All right.
>
> We ready for the jury now?
>
> [*DEFENSE ATTORNEY JOHNSON*]: Yes
>
> [*DEFENSE ATTORNEY CURRY*]: Yes.

MCR 2.513(B) provides, in relevant part:

The trial court must control the proceedings during trial, limit the evidence and arguments to relevant and proper matters, and take appropriate steps to ensure that the jurors will not be exposed to information or influences that might affect their ability to render an impartial verdict on the evidence presented in court.

To interpret a court rule, "we apply the same rules as when we engage in statutory interpretation." *People v Buie*, 285 Mich App 401, 416; 775 NW2d 817 (2009). The overarching goal of rule interpretation "is to give effect to the intent of the authors." *Id*. To begin interpreting a court rule, the first step is to consider the language of the rule. *Id*. "If the language of the court rule is clear and unambiguous, then no further interpretation is required or allowed." *Id*.

Defendant contends that the trial court's action was insufficient because it did not exhaust "every effort to protect" the jurors from being exposed to information that might affect their ability to render an impartial verdict. However, as the plain language of MCR 2.513(B) provides, the trial court is required to "*take appropriate steps* to ensure that the jurors will not be exposed to information or influences that might affect their ability to render an impartial verdict." (Emphasis added.) After having a discussion outside the presence of the jury, the trial court instructed the person in the gallery "not [to] reveal the contents of anything that" he just heard to the juror he was associated with. The record indicates that the person in the gallery understood the trial court's instructions and further agreed that he would keep his "lips sealed." Moreover, the trial court had previously instructed the jury not to discuss the case with family, friends, or others on three separate occasions, and jurors are presumed to follow instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Thus, the trial court took appropriate steps to ensure that the jurors were not exposed to information or influences that might have affected their ability to render an impartial verdict. Further, there was no evidence presented that the person in the courtroom communicated with the juror. While defendant claims on appeal that communication between the two could have easily happened through social media, there is no evidence for us to conclude that there was any communication between the person in the courtroom and any juror. In the absence of any evidence of improper communications to a juror, and because the trial court met its obligation under the court rule to "take appropriate steps," to ensure that the jurors will not be exposed to information or influences that might affect their ability to render an impartial verdict MCR 2.513(B), no error occurred. Defendant is not entitled to relief on this issue.

Defendant next argues he was denied the effective assistance of counsel when his trial counsel failed to present expert testimony interpreting defendant's medical records. Specifically, defendant argues that an expert would have testified that defendant underwent a cervical fusion of the C-1 and C-2 levels on his spine and this information would have shown defendant's state of mind at the time of his interaction with Shuler. According to defendant, having a medical expert interpret the medical records would have been important to any determination that defendant believed he faced serious bodily harm when Shuler pinned the car door on defendant. Hence, defendant argues that he was prejudiced by this error because defendant's testimony was meaningless without the expert explaining the seriousness of defendant's physical injuries to his neck. Defendant also argues that he was denied the effective assistance of counsel when counsel failed to object to the trial court's insufficient actions taken to protect defendant's right to a trial by jury.

-6-

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). To establish ineffective assistance of counsel, the defendant must show that "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). A defendant is prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. *Id.* at 81. Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012), citing *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Counsel is not required to raise meritless or futile objections. *Eisen*, 296 Mich App at 329, citing *People v Moorer*, 262 Mich App 64, 76; 683 NW2d 736 (2004). Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

We first address defendant's contention that trial counsel rendered ineffective assistance by failing to present testimony from an expert witness to interpret defendant's medical reports. We begin our resolution of this issue by noting that decisions regarding whether to call or question a witness are presumed to be matters of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012), citing *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). Counsel has wide discretion as to matters of trial strategy. *Heft*, 299 Mich App at 83. To assert that trial counsel was ineffective for failing to call an expert witness, a defendant must offer proof that the expert witness would have testified favorably if called by the defense. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003).

First, and contrary to defendant's assertions, there were no medical records indicating the type of cervical fusion alleged by defendant on appeal. Rather, the record reveals that the trial court reviewed the medical records and inquired as to where the records regarding cervical fusion were located. Even when such records were not produced, the trial court allowed defendant's medical records into evidence; however, trial counsel chose not to introduce them. On appeal, defendant does not argue that trial counsel was ineffective for failure to introduce the medical records. Rather, defendant argues that trial counsel was ineffective for not providing an expert to testify as to what the medical records revealed about the basis for the fear defendant argued he had for his safety. If the basis of defendant's argument is that trial counsel was ineffective for failing to call a witness to describe evidence which was never offered, we find this argument devoid of legal merit. Additionally, we note the lack of any record evidence as to what an expert would have testified to or if an expert would have testified favorably for defendant. Just as there was no record evidence as to what an expert would have stated, defendant failed to provide this Court with an affidavit explaining what an expert would have testified to regarding either the nature or extent of defendant's injuries. Our Supreme Court has stated that " . . . it is important to note that defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Quoting, *People v Ginther*, 390 Mich. 436 at 442-43, 212 N.W.2d 922, our Supreme Court went on to state:

"A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim. To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes hypotheses consistent with the view that his trial lawyer represented him adequately. *Id.*

Absent any evidence regarding an expert's opinion, especially with respect to the nature and extent of defendant's claimed injuries, we conclude that defendant failed to establish the necessary factual predicate of this part of his ineffective assistance of counsel claim. See, *Carbin*, 463 Mich at 600, quoting *Hoag*, 463 Mich at 6-7.

Even presuming that defendant produced a qualified medical expert who would testify in strict accord with defendant's arguments on appeal, defendant cannot establish that he was prejudiced by the failure of trial counsel to produce an expert because this case was a contest of two completely different and competing narratives. The victim testified that defendant engaged in a premeditated attack, whereas defendant testified that the victim was going to kill defendant by crushing defendant's head in the car door. Against this backdrop of competing narratives, we can find no scenario whereby insertion of defendant's purported expert witness affects the outcome of these proceedings. Thus, even presuming that trial counsel's failure to procure an expert witness fell below a standard of reasonableness, defendant cannot establish that but for trial counsel's error, the result of the proceedings would have been different. *Heft*, 299 Mich App at 81.

Defendant also argues that trial counsel was ineffective for failing to object to the trial court's alleged deficiency in dealing with the situation when it was discovered that the person in the gallery was associated with one of the jurors. As discussed previously, the trial court took appropriate steps to ensure that the jurors would not be exposed to information or influences that might affect their ability to render an impartial verdict on the evidence presented in court. MCR 2.513(B). Any objection would have been meritless. Because counsel is not required to raise meritless or futile objections, *Eisen*, 296 Mich App at 329, citing *Moorer*, 262 Mich App at 76, counsel's performance did not fall below an objective standard of reasonableness in this regard.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Stephen L. Borrello
/s/ Michael F. Gadola