PEOPLE v ORLEWICZ

Docket No. 285672. Submitted June 8, 2011, at Detroit. Decided June 14,
2011, at 9:05 a.m. Leave to appeal sought.

Jean P. Orlewicz was convicted by a jury in the Wayne Circuit Court of
first-degree premediated murder, first-degree felony murder, and
mutilation of a dead body and was sentenced by the court, Annette J.
Berry, J., to life imprisonment for each murder conviction and 50 to
120 months in prison for the mutilation conviction, all sentences to be
served concurrently. Defendant filed a motion for a new trial and also
appealed in the Court of Appeals. While the appeal was pending, the
successor trial court judge, Bruce U. Morrow, J., issued an opinion in
which he concluded that the trial court's exclusion of certain psychi-
atric testimony at defendant's trial had denied defendant the effec-
tive assistance of counsel, thereby depriving him of a fair trial. The
court granted defendant's motion for a new trial. The prosecution
cross-appealed that order.

The Court of Appeals *held*:

1. The psychiatric testimony would have cast no light whatsoever
on which of the two versions of the events was the more likely. It is
not apparent, under the circumstances of this case, how the proposed
testimony would have assisted the jury in determining which version
of the events was more credible or whether, under defendant's
version, he would have honestly and reasonably believed that he was
in imminent and grave danger from the victim. The trial court did not
abuse its discretion by excluding the testimony and the successor trial
court judge erred by granting defendant's motion for a new trial on
the basis that the testimony was erroneously excluded. The order
granting a new trial is reversed.

2. The trial court did not err by excluding evidence of personal
protection orders issued against the victim. Although evidence
concerning the aggressive character of a homicide victim is admis-
sible in furtherance of a self-defense claim to prove that the victim
was the probable aggressor, this form of character evidence may
only be admitted in the form of reputation testimony, not by
testimony regarding specific instances of conduct unless the testi-
mony regarding those instances is independently admissible for
some other reason or where character is an essential element of a

claim or defense. The victims' character is not an essential element of defendant's self-defense claim. The personal protection order documents concerned specific instances of conduct and were properly excluded on that basis.

3. Evidence of the victim's MySpace page should have been admitted because it constituted general reputational evidence rather than evidence regarding specific instances of conduct. Exclusion of the evidence was harmless error because it would have been sufficiently cumulative evidence regarding the victim's violent and aggressive character.

4. The trial court's jury voir dire was not deficient.

5. The prosecution improperly introduced evidence that a computer search for criminal-defense attorneys was conducted on the computer in defendant's home shortly after the offense. The improper admission of the evidence was harmless under the circumstances of this case.

6. Defendant's various claims of ineffective assistance of counsel were either not supported by the record or, if counsel committed an error, defendant was not prejudiced thereby.

7. The evidence was sufficient for the jury to find that defendant killed the victim while harboring an intent to steal his gun. Sufficient evidence supported the felony-murder conviction.

8. Defendant's conviction of both first-degree premeditated murder and first-degree felony murder arising out of the death of a single victim violated double-jeopardy principles. The appropriate remedy is to correct the judgment of sentence to specify that defendant is convicted of a single count of first-degree murder supported by two theories.

9. Defendant waived his right to a public trial during the jury voir dire under the circumstances of this case.

Order granting new trial reversed; convictions and sentences affirmed as modified; remanded for modification of the judgment of sentence.

1. EVIDENCE — RELEVANT EVIDENCE.

Evidence is relevant if it tends to make a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence (MRE 401).

2. HOMICIDE — CLAIM OF SELF-DEFENSE — EVIDENCE — VICTIM'S AGGRESSIVE CHARACTER.

Evidence concerning the aggressive character of a homicide victim, even if the defendant was unaware of it at the time of the

homicide, is admissible in furtherance of a self-defense claim to prove that the victim was the probable aggressor, but such character evidence may only be admitted in the form of reputation testimony, not by testimony regarding specific instances of conduct unless the testimony regarding those instances is independently admissible for some other reason or where character is an essential element of a claim or defense (MRE 404[a][2]; MRE 405).

3. HOMICIDE — FELONY-MURDER DOCTRINE.

The felony-murder doctrine does not apply if the intent to commit the underlying felony is not formed until after the homicide; a murder committed during the unbroken chain of events surrounding a predicate felony is committed in the perpetration of that felony; the murder and the felony need not be contemporaneous and the defendant need only have intended to commit the underlying felony when the homicide occurred for the felony-murder doctrine to apply.

4. HOMICIDE — CONSTITUTIONAL LAW — DOUBLE JEOPARDY — FIRST-DEGREE MURDER — FELONY MURDER — SINGLE VICTIM.

It is a violation of double jeopardy protections when a defendant is convicted of both first-degree premeditated murder and first-degree felony murder arising out of the death of a single victim; the proper remedy is to modify the conviction to specify that it is for a single count of first-degree murder supported by two theories.

5. CONSTITUTIONAL LAW — RIGHT TO PUBLIC TRIAL — VOIR DIRE — WAIVER OF RIGHT TO PUBLIC TRIAL.

The Sixth Amendment right to a public trial extends to the voir dire of prospective jurors; the right to a public trial is not self-executing and the defendant must timely assert the right; failure to timely assert the right waives the right and forecloses the later grant of relief.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Jeffrey Caminsky*, Assistant Prosecuting Attorney, for the people.

*Elizabeth L. Jacobs* for defendant.

Before: FORT HOOD, P.J., and DONOFRIO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. Defendant was convicted by a jury of first-degree premeditated murder, MCL 750.316(1)(a), first-degree felony murder, MCL 750.316(1)(b), and mutilation of a dead body, MCL 750.160. He was sentenced to life imprisonment for each murder conviction and 50 to 120 months' imprisonment for the mutilation conviction, all sentences to be served concurrently. Defendant appealed, and while that appeal was pending, a successor trial court judge granted his motion for a new trial. The prosecutor then filed a cross-appeal from that order. We reverse the trial court's order granting defendant a new trial and affirm defendant's convictions and sentences as modified in this opinion.

There is no dispute that defendant killed the victim, dismembered the victim's body, and attempted to dispose of it by burning it. The gravamen of the dispute in this matter is why defendant did so. At the time, defendant was 17 years old, 5 feet 7 inches tall, and weighed approximately 150 pounds. The victim was 26 years old, six-feet tall, weighed approximately 250 pounds, and was intimidating; additionally, the victim had a reputation for physical and verbal violence, association with guns, aggression, a quick temper, and for being confrontational. In essence, the prosecution's theory was that defendant did not like the victim and was upset that the victim refused to repay a debt, and he devised a plan to commit the "perfect crime" of killing the victim and leaving no evidence. Defendant contended that he was coerced into involvement in a robbery scheme devised by the victim and that, when the plan failed, the victim threatened defendant's life, whereupon defendant killed the victim in self-defense and attempted to conceal the body out of panic. The jury found the prosecution's case more credible.

After defendant was convicted and sentenced, he filed a motion for a new trial. He also filed a motion to disqualify the trial judge because of her comments at sentencing. The trial judge denied the motion for disqualification, but the chief judge granted it to avoid an appearance of impropriety. The case was reassigned to a new judge who conducted an evidentiary hearing on defendant's motion for a new trial. The successor judge later issued an opinion in which he concluded that the trial court's exclusion of certain psychiatric testimony at defendant's trial denied defendant the effective assistance of counsel, thereby depriving defendant of a fair trial. Accordingly, the court granted defendant's motion for a new trial. We address the prosecutor's cross-appeal of that order first, because most of defendant's issues on appeal could be moot if we were to uphold it.

A court may grant a new trial "on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." MCR 6.431(B). A trial court's decision on a motion for a new trial is reviewed for an abuse of discretion. *People v Lemmon*, 456 Mich 625, 641; 576 NW2d 129 (1998). A trial court's decision concerning the conduct and scope of voir dire is also reviewed for an abuse of discretion. *People v Sawyer*, 215 Mich App 183, 186-187; 545 NW2d 6 (1996). Further, evidentiary rulings are also reviewed for an abuse of discretion. *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). An appellate court should generally defer to the trial court's judgment, and if the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion. *People v Carnicom*, 272 Mich App 614, 616-617; 727 NW2d 399 (2006).

We review constitutional and statutory questions de novo. *People v McPherson*, 263 Mich App 124, 131; 687 NW2d 370 (2004). Further, preliminary questions of law such as whether a rule of evidence or a statute precludes the admission of evidence, are reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

Defendant's motion for a new trial was based, in relevant part, on the trial court's exclusion of psychiatric testimony that defendant argued was relevant to his self-defense claim. We are puzzled by the successor judge's reliance on principles regarding ineffective assistance of counsel to conclude that defendant was entitled to a new trial, given that the trial court found no deficiencies in counsel's performance, nor do we. However, the Sixth Amendment guarantees defendants " 'a meaningful opportunity to present a complete defense.' " *Holmes v South Carolina*, 547 US 319, 324; 126 S Ct 1727; 164 L Ed 2d 503 (2006) (citation omitted). We find that defendant is entitled to have the merits of his claims addressed, irrespective of the label given to them. Therefore, we will address the merits of those claims.

The right to present a defense is not absolute or unfettered. A trial court may exclude evidence if its probative value is outweighed by factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. *Id*. at 326. Therefore, a court may exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues. *Id*. at 326-327. Similarly, defendants are entitled to present witnesses in their defense, but again that right is not absolute. *People v McFall*, 224 Mich App 403, 407-408; 569 NW2d 828 (1997). "To the contrary, it requires a showing that the witness' testi-

mony would be both material and favorable to the defense." *Id.* at 408. The underlying question is whether the proffered evidence or testimony is relevant and material, or unfairly prejudicial.

A claim of self-defense at common law required an honest and reasonable belief of an imminent danger of death or great bodily harm. *People v Dupree,* 486 Mich 693, 707-708; 788 NW2d 399 (2010). The Self-Defense Act, MCL 780.971 *et seq.,* which became effective before the killing in this case, continues to require an honest and reasonable belief of imminent death or harm. MCL 780.972. A defendant's history and psychological makeup may be relevant to explain the reasonableness of a defendant's belief that he or she was in inescapable danger. *People v Wilson,* 194 Mich App 599, 604; 487 NW2d 822 (1992) (discussing the "battered spouse syndrome"). And reasonableness depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor. *People v Doss,* 406 Mich 90, 102; 276 NW2d 9 (1979) (discussing what constitutes "reasonable force" for a police officer to effectuate an arrest). A defendant's psychological idiosyncrasies may, at least in theory, be relevant to the reasonableness of the defendant's belief that he or she was in danger. But that is not the situation in the case before us.

Evidence is relevant if it tends to make a "fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. This case featured two starkly contrasting, and largely incompatible, narratives of what *factually* transpired just before the killing. Under the prosecution's version of events, there is no possible way defendant could have been legitimately defending himself. Under defendant's version of events, there is

absolutely no leap of logic or faith required to conclude that it is objectively reasonable to fear for one's life when a large, intimidating person with an undisputed reputation for violence is pointing a gun at him and explicitly threatening to "blow [his] fricking brains out." Defendant's self-defense claim here depends purely on which of the two factual scenarios actually happened. Therefore, the psychiatric testimony would only have been relevant if it had some bearing on which scenario occurred.

Simply put, the psychiatric testimony would have cast no light whatsoever on which of the two versions of events was the more likely. Either defendant carefully planned the victim's demise and disposition, or the victim lost his temper and presented a highly convincing threat of immediate death. We are unable to perceive how, under the circumstances of this case, the proposed psychiatric testimony would have assisted the jury in determining which version of events was more credible or whether, under defendant's scenario, he would have honestly and reasonably believed that he was in imminent and grave danger. The trial court did not abuse its discretion by excluding the psychiatric testimony, and the successor judge erred by granting defendant's motion for a new trial on that basis. We reverse the order granting defendant's motion for a new trial.

In defendant's appeal, he argues that he was additionally deprived of his right to present a case because the trial court excluded evidence of personal protection orders (PPOs) issued against the victim and evidence of the victim's MySpace page.[1] Defendant contends that

---

[1] MySpace is a social-networking website. Users can post various semistatic descriptions of themselves, as well as photographs and other media, public discussions, links to friends or other websites, and various

this evidence would have been relevant to show that the victim was the initial aggressor. We agree in part, although we find the error harmless.

Evidence concerning the aggressive character of a homicide victim, even if the defendant was unaware of it at the time, is admissible in furtherance of a self-defense claim to prove that the victim was the probable aggressor. MRE 404(a)(2); *People v Harris*, 458 Mich 310, 315-316; 583 NW2d 680 (1998). However, this type of character evidence may only be admitted in the form of reputation testimony, not by testimony regarding specific instances of conduct unless the testimony regarding those instances is independently admissible for some other reason or where character is an essential element of a claim or defense. MRE 405; *Harris*, 458 Mich at 318-319. The victim's character is not an essential element of defendant's self-defense claim. The PPOs concerned specific instances of conduct and were properly excluded on that basis.[2]

However, we find that the MySpace page is not evidence concerning a specific instance of conduct. While a social-networking or other kind of personal website might well contain depictions of specific instances of conduct, such a website must be deemed a gestalt and not simply a conglomerate of parts. When considered by *itself*, a social-networking or personal website is more in the nature of a semipermanent yet fluid autobiography presented to the world. In effect, it

forms of personal-status updates. The victim's MySpace page presented the victim consistently with his reputation for violence, including aggressive language, and references to guns, bullets, gang activities, drugs, and vengeance.

[2] We refer to the PPO documents themselves, which constitute allegations of specific conduct. However, defendant would have been free to call the plaintiffs in the PPO actions as witnesses to testify with regard to reputation only and not with regard to the specific instances of conduct.

is self-directed and self-controlled general-character evidence. Clearly, because people change over time, its relevance might be limited only to recent additions or changes; furthermore, it is obviously possible for people to misrepresent themselves, which could present a fact issue. But in the abstract, social-networking and personal websites constitute general reputational evidence rather than evidence concerning specific instances of conduct, and so the victim's MySpace page should have been admissible.

Nonetheless, the exclusion of the MySpace page itself was harmless here. Defendant was able to testify about the page and the contents thereof. We are unpersuaded that the specific page in this particular case was so visceral that its essence could not be captured by a spoken testimonial description. Furthermore, and of particular consequence, the victim's violent and aggressive character was not seriously in doubt. Presenting the page itself to the jury would have been sufficiently cumulative that we find its exclusion harmless.

Defendant next argues that the trial court's jury voir dire was deficient because the court failed to ask probing questions designed to expose juror bias arising from pretrial publicity. We disagree. Defendant fails to articulate what the trial court should have asked in addition to the questions it did ask, and the trial court appears from the record to have given the attorneys the opportunity to request questions to be asked. The trial court inquired into the jurors' prior knowledge and opinions of the matter and their ability to decide the case fairly and impartially, and it did not do so in a manner that created bias. Defendant has a right to a fair and impartial jury, but he does not have a right to individual, sequestered voir dire. *People v Tyburski*, 445 Mich 606, 618-619; 518 NW2d 441 (1994). We find no abuse of discretion.

Defendant next argues that misconduct by the prosecutor deprived him of a fair trial. We disagree. Because defendant did not object to the prosecutor's conduct in the trial court, his claims of misconduct are not preserved. *People v Schutte*, 240 Mich App 713, 720; 613 NW2d 370 (2000).[3] Therefore, defendant must show a plain error affecting his substantial rights. *Id.*; see also *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Claims of prosecutorial misconduct are reviewed on a case-by-case basis, and any challenged remarks are reviewed in context. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). The test for prosecutorial misconduct is whether the defendant was deprived of a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995).

Defendant argues that it was improper for the prosecutor to introduce evidence that a computer search for criminal-defense attorneys was conducted on the computer in defendant's home shortly after the offense. We agree. Evidence that defendant, or someone who used the computer, searched for an attorney infringes on defendant's right to an attorney and should not have been introduced into evidence. Moreover, we find that it cannot possibly have been a good-faith effort on the part of the prosecutor. *Noble*, 238 Mich App at 660. However, we find this misconduct harmless under the circumstances. There was no objection to this evidence at trial, presumably because, under the unique circumstances of this case, the search for an attorney could have supported either version of events. It was, after all, undisputed that defendant was fearful of the consequences of the discovery of the victim's death, irrespective of whether he acted out of calculated malice or out

---

[3] Abrogated on other grounds in *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

of a panicked response to an imminent and credible threat. While we do not condone the admission of this evidence, we find it harmless under the circumstances.

Defendant also argues that the prosecutor improperly referred to defendant's failure to produce evidence of the victim's violent character. Viewed in context, the prosecutor did not comment on defendant's failure to produce evidence, but rather on the evidence that *was* presented and what that evidence did not show. The prosecutor accurately stated that none of the witnesses claimed to have seen the victim engage in an actual act of violence. Therefore, the remark was not improper. *People v Marji*, 180 Mich App 525, 538; 447 NW2d 835 (1989). Further, the comment was a legitimate response to defense counsel's personal attacks on the victim. *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001).

Defendant lastly argues that he was prejudiced by a prearraignment remark in which Wayne County Prosecutor Kym Worthy referred to this offense as a "thrill kill" during a press conference. The remark was made long before trial. As the prosecution argues on appeal, the only way it could have deprived defendant of a fair trial would be if it tainted the jury pool. However, there is no basis for concluding that it did. Defendant never moved for a change of venue before trial. Further, jury voir dire presented defendant with the opportunity to explore the issue of juror bias at trial. Defendant has not demonstrated that the remark prejudiced his right to a fair trial.

Defendant next argues that he received ineffective assistance of counsel, arguing that trial counsel should have made a number of additional objections and requests for jury instructions. We disagree. To establish ineffective assistance of counsel, a defendant must show

that counsel's performance was so objectively deficient that counsel was not performing as the attorney guaranteed by the constitution. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). Defendant must also show that he was prejudiced thereby. *Id*. at 312. To establish prejudice, defendant must show that there is a reasonable probability that the alleged error made a difference in the outcome of the trial. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995); *Pickens*, 446 Mich at 312.

Defendant argues that counsel should have objected to the previously discussed evidence of the computer search for defense attorneys and the prosecutor's commentary thereon. However, as discussed, although that evidence was improper, it was harmless under the circumstances and could even have supported the defense theory, so defense counsel was not ineffective for failing to object. *LaVearn*, 448 Mich at 216. Defense counsel was similarly not ineffective for failing to make a futile objection to the prosecutor's comment that a codefendant failed to corroborate defendant's claim that the victim threatened to kill them; this was an accurate and therefore proper comment on the evidence. *Marji*, 180 Mich App at 538. Defense counsel was not ineffective for failing to raise additional arguments in favor of admitting the PPOs; as discussed, they were properly excluded.

Counsel was not ineffective for failing to raise additional objections to the introduction of recorded telephone conversations between defendant and his father from jail. Defendant placed his character at issue by attempting to introduce evidence of his peacefulness, so the prosecutor properly introduced the recordings to rebut that evidence. The recordings or the contents thereof were variously admissible as reputation or

opinion evidence under MRE 405 and under several exceptions to the hearsay-evidence rule. Furthermore, the trial court took great and commendable care to ensure that the jury truly understood that evidence of defendant's character was not evidence that he committed any of the crimes for which he was charged. Counsel was not ineffective for failing to raise further objections to the recordings, and even if counsel committed an error, we find that defendant would not have been prejudiced thereby.

Defendant next argues that counsel was ineffective for failing to request a cautionary instruction regarding accomplice testimony. The trial court did give the jury the undisputed-accomplice testimony instruction, CJI2d 5.4, but did not give the cautionary instruction that should have followed, CJI2d 5.6. Nevertheless, we review the instructions as a whole to determine whether the trial court fairly protected defendant's rights and informed the jury of the issues to be determined. *People v Gaydosh*, 203 Mich App 235, 237; 512 NW2d 65 (1994), see also *People v Young*, 472 Mich 130, 144; 693 NW2d 801 (2005) (explaining that the trial court has discretion whether to give the cautionary accomplice instruction and an unpreserved claim regarding the failure to do so is reviewable only for plain error). The trial court did give the general witness-credibility instruction, which includes an instruction to consider whether a witness has any prejudice or personal interest in the outcome of a case and whether the witness had been subjected to any influences that might affect his or her testimony. In light of defense counsel's extensive attacks on the accomplices' credibility, including their agreements with the prosecutor and strong motivation to blame defendant, we find that defendant's rights were not prejudiced by counsel's failure to request CJI2d 5.6.

Defendant also argues that defense counsel was ineffective for failing to object to certain errors in the trial court's jury instruction on defense of others, CJI2d 7.21. The trial court properly instructed the jury that the lawful defense of others may excuse a criminal act and that defendant must have "honestly and reasonably believed" that his codefendant was in imminent danger of death or serious injury, even if it later turned out that defendant was mistaken. Further, when instructing the jury on self-defense, the trial court stated that defendant's conduct was to be judged according to how the circumstances appeared to him at the time, and the court indicated that "this instruction also includes defense of others." Although the trial court technically omitted part of CJI2d 7.21(2) and slightly misread part of CJI2d 7.21(4), the trial court's instructions as a whole properly and completely instructed the jury and protected defendant's rights. Counsel was not ineffective for failing to object.

Defendant next argues that defense counsel was ineffective for failing to move to strike a portion of defendant's statement in which he explained that the Drano found in his truck was for making bombs. Although defendant argues that the comment was not probative of any issue, the comment was elicited in the context of a conversation in which defendant referred to himself as a "pyro," a statement that was relevant in light of the evidence that the victim's body was burned. Because any objection would have been futile, counsel was not ineffective for failing to object.

Defendant lastly argues that defense counsel was ineffective for failing to request an instruction on second-degree murder as a necessarily included lesser offense of felony murder. Given that defendant was convicted of the alternative theory of first-degree pre-

meditated murder, for which the jury received a lesser-offense instruction on second-degree murder, defendant cannot establish that he was prejudiced by counsel's failure to request a second-degree-murder instruction.

Defendant argues that his felony-murder conviction must be vacated because there was insufficient evidence that the victim was killed during the commission or attempted commission of a larceny. We disagree. The sufficiency of the evidence is evaluated by reviewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find every element of the crime proven beyond a reasonable doubt. *People v Petrella*, 424 Mich 221, 268-270; 380 NW2d 11 (1985).

The predicate felony in this case was larceny of the victim's gun, which defendant contends he did not take until after the killing, and then he only did so for the purpose of hiding it. The felony-murder doctrine does not apply if the intent to steal the victim's property was not formed until after the homicide. *People v Brannon*, 194 Mich App 121, 125; 486 NW2d 83 (1992). However, "a murder committed during the unbroken chain of events surrounding the predicate felony is committed 'in the perpetration of' that felony . . . ." *People v Gillis*, 474 Mich 105, 121; 712 NW2d 419 (2006). The murder and the felony need not be contemporaneous; rather, the defendant need only have intended to commit the underlying felony when the homicide occurred. *Brannon*, 194 Mich App at 125. Viewed in a light most favorable to the prosecution, the evidence was sufficient for the jury to find that defendant killed the victim while harboring an intent to steal his gun. Defendant's reason for doing so was a question of fact for the jury. The evidence was sufficient to support defendant's felony-murder conviction. Therefore, in addition, any

error in defendant's bind over was harmless. *People v Moorer*, 246 Mich App 680, 682; 635 NW2d 47 (2001).

However, convicting a defendant of both first-degree premeditated murder and first-degree felony murder arising out of the death of a single victim is a violation of double-jeopardy protection. *People v Williams*, 265 Mich App 68, 72; 692 NW2d 722 (2005). We will uphold a single conviction for murder based on two alternative theories. *Id.* Accordingly, the proper remedy when a defendant is convicted of both first-degree premeditated murder and first-degree felony murder arising out of the death of a single victim is to modify the conviction to specify that it is for a single count of first-degree murder supported by two theories.

Defendant finally argues that he was denied the right to a public trial. Had defendant properly raised this as a constitutional issue, we would agree. At the very beginning of the trial, the trial court cleared the courtroom for voir dire because of the large number of potential jurors. Defendant did not object. However defense counsel subsequently asked: "[I]s it possible to have the family stay[?]" The judge said that there was not enough room. Again, defendant did not object, let alone assert that he had a constitutional right to the presence of his family or others in the courtroom during jury selection.

In *Presley v Georgia*, 558 US 209, ___; 130 S Ct 721, 724; 175 L Ed 2d 675 (2010), the Court held that "the Sixth Amendment right to a public trial extends to the voir dire of prospective jurors," subject to certain exceptions:

> "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alterna-

tives to closing the proceeding, and it must make findings
adequate to support the closure." [*Id.* at ___; 130 S Ct at
724, quoting *Waller v Georgia*, 467 US 39, 48; 104 S Ct
2210; 81 L Ed 2d 31 (1984).]

The Court in *Presley* indicated that the number of
prospective jurors would not be an overriding concern,
that reasonable alternatives had to be considered even
if not advanced by the parties, and that possible alter-
natives when the venire was large could "include re-
serving one or more rows for the public; dividing the
jury venire panel to reduce courtroom congestion; or
instructing prospective jurors not to engage or interact
with audience members." *Presley*, 558 US at ___; 130 S
Ct at 725. Significantly, in *Presley*, there was a specific
objection to the exclusion of the public from the court-
room, *id.* at ___; 130 S Ct at 722, whereas in the present
case, there was no specific objection.

The record does not show that there was a basis for
excluding defendant's family or others from the court-
room during the jury voir dire. However, the request for
the presence of family was not a legal objection to their
exclusion. In context, it appears that defendant was
requesting an exception for his family to the judge's
announcement regarding closure of the courtroom, not
that defendant was challenging the ruling on any con-
stitutional or legal basis.

Like the defendant here, the defendant in *People v
Vaughn*, 291 Mich App 171; 804 NW2d 764 (2010),
failed to object to closure of the courtroom. This Court
upheld the conviction, stating:

   [T]his right [to a public trial] is not self-executing: the
   defendant must timely assert the right. *Levine v United
   States*, 362 US 610, 619-620; 80 S Ct 1038; 4 L Ed 2d 989
   (1960) ("Due regard generally for the public nature of the

judicial process does not require disregard of the solid demands of the fair administration of justice in favor of a party who, at the appropriate time and acting under advice of counsel, saw no disregard of a right, but raises an abstract claim only as an afterthought on appeal."). Thus, the failure to timely assert the right to a public trial forecloses the later grant of relief. See *United States v Hitt*, 473 F3d 146, 155 (CA 5, 2006) ("Where a defendant, with knowledge of the closure of the courtroom, fails to object, that defendant waives his right to a public trial."); *Freytag v Comm'r of Internal Revenue*, 501 US 868, 896; 111 S Ct 2631; 115 L Ed 2d 764 (1991) (Scalia, J., concurring) (noting that review of a claim of error with regard to certain rights, such as the Sixth Amendment right to a public trial, may be foreclosed by the failure to timely assert the right); see also *Peretz v United States*, 501 US 923, 936-937; 111 S Ct 2661; 115 L Ed 2d 808 (1991) (noting that the failure to timely assert the right to have an Article III judge preside over jury voir dire forecloses the grant of relief). [*Id*. at 196.]

We conclude that defendant waived his right to a public trial during the jury voir dire.

In conclusion, the successor judge erred by granting defendant's motion for a new trial, and we reverse that order. Defendant has not presented to us any errors or infringements of his rights that warrant reversal, and he waived his public-trial issue. We remand for the administrative task of correcting defendant's judgment of sentence to show that he is convicted of a single count of first-degree murder supported by two theories and affirm defendant's convictions and sentences as modified. We do not retain jurisdiction.

FORT HOOD, P.J., and DONOFRIO, J., concurred with RONAYNE KRAUSE, J.