*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERELL JOSEY,

        Defendant-Appellant.

UNPUBLISHED
April 21, 2025
11:36 AM

No. 363378
Oakland Circuit Court
LC No. 2021-278252-FC

Before: GARRETT, P.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

During a road-rage incident, defendant, Terell Josey, shot and killed Francis Dombrowski. The prosecution charged Josey with open murder, MCL 750.316, as a result of the incident. During trial, Josey requested a self-defense jury instruction with respect to voluntary manslaughter as a lesser-included offense of murder. The trial court denied the request. Josey appeals by right his jury-trial convictions of voluntary manslaughter, MCL 750.321, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and carrying a concealed weapon (CCW), MCL 750.227. We conclude that the trial court erred by denying Josey's request to instruct the jury that self-defense is a defense to voluntary manslaughter and that trial counsel rendered ineffective assistance of counsel by failing to request a self-defense jury instruction with respect to felony-firearm. Accordingly, we reverse those convictions and remand for a new trial.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from a shooting that occurred in Troy on July 5, 2021. That night, Josey was a passenger in a white Jeep that his then-fiancée, Kiara Fuller, drove. Josey's two-year-old son was in the backseat. As Fuller was driving south on Rochester Road, Dombrowski ran a red light and nearly T-boned the Jeep. Fuller swerved to avoid a collision and honked her horn. Dombrowski stuck his middle finger out the window, and, when Fuller passed Dombrowski's vehicle, he swore at Fuller and Josey, which prompted Josey to yell back at him. Josey told Fuller that Dombrowski called him a racial slur and spit on him—the vehicles apparently being close enough for Dombrowski in the driver's seat of his vehicle to spit on Josey in the passenger seat of Fuller's Jeep. As Fuller continued driving, Dombrowski sped up ahead of her, blocked her from

changing lanes, and kept slamming on his brakes. Eventually, Dombrowski pulled into a gas station parking lot and Fuller pulled into the parking lot directly behind him. Both vehicles stopped.

The gas station surveillance camera captured what occurred thereafter, and the prosecution played portions of the video during trial. The video depicts Dombrowski getting out of his vehicle shortly after Fuller's Jeep stopped behind his vehicle. He then took a few steps toward the back of his vehicle before running behind his vehicle toward Josey, who was getting out of the passenger side of the Jeep. Dombrowski ran toward Josey in an aggressive manner. It appeared from the video that Dombrowski intended to physically assault Josey. As Dombrowski reached Josey, Josey raised his right hand, which was holding a gun. Dombrowski grabbed Josey's right shoulder, and Josey then shot Dombrowski three times in quick succession. Dombrowski fell to the ground. He suffered a fatal shot to his chest. Dombrowski's toxicology report indicated that his blood-alcohol level was 0.22, and his wife testified that he was a "heavy drinker," but that he did not appear intoxicated when he left their home that night. Hours after the shooting, Josey turned himself in to the police.

The prosecution charged Josey with open murder, felony-firearm, and CCW. As previously stated, the jury convicted Josey of voluntary manslaughter, felony-firearm, and CCW. Thereafter, the trial court denied Josey's motion for a new trial in which he raised the jury-instruction issues that he now raises in this appeal.

## II. VOLUNTARY MANSLAUGHTER

Josey first argues that the trial court's denial of his request to instruct the jury that self-defense is a defense to voluntary manslaughter denied him his right to present a defense. We agree and conclude that Josey is entitled to a new trial with a properly instructed jury.

We review de novo questions of law regarding jury instructions. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "We also review de novo the constitutional issue whether a defendant was denied his right to present a defense." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 8. We review for an abuse of discretion a trial court's decision on a motion for a new trial, *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010), and the court's determination whether a jury instruction applies to the facts of a case, *Gillis*, 474 Mich at 113. "A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes." *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019).

A criminal defendant has a state and federal constitutional right to present a defense, and a jury-instruction error that directly affects the defendant's theory of defense can infringe on that right. *People v Leffew*, 508 Mich 625, 643; 975 NW2d 896 (2022). "[J]ury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (quotation marks and citation omitted). "We must consider the instructions as a whole, rather than piecemeal, to determine whether any error occurred." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). Even if imperfect, a jury-

instruction error "is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id*. at 501-502.

MCL 780.972 of the self-defense act, MCL 780.971 *et seq*., provides in part

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

In the context of self-defense, "reasonableness depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011), remanded on other grounds 493 Mich 916 (2012). A person who uses excessive force or acts as the initial aggressor does not act in justifiable self-defense. *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013). Once a defendant produces evidence that he acted in self-defense, the burden is on the prosecution to disprove the defense beyond a reasonable doubt. *People v Ogilvie*, 341 Mich App 28, 36; 989 NW2d 250 (2022).

Manslaughter is a lesser-included offense of murder, with the distinguishing element being malice. *People v Yeager*, 511 Mich 478, 489-490; 999 NW2d 490 (2023). With voluntary manslaughter, provocation and heat of passion negate the element of malice. *Id*. "[F]or an act to be considered voluntary manslaughter, the defendant must kill in the heat of passion, the passion must be caused by adequate provocation, and there cannot be a lapse of time during which a reasonable person could control their passions." *Id*. at 489. "The provocation must be sufficient to cause the defendant to act out of passion rather than reason, but it also must be sufficient to cause a reasonable person to lose control, not just the specific defendant." *Id*.

During trial, defense counsel requested that the jury be instructed that self-defense is a defense to voluntary manslaughter. The prosecutor opposed the request, arguing that self-defense requires an intentional act while voluntary manslaughter requires that the defendant lacked the capacity to commit an intentional act because of heat of passion and provocation. The prosecutor asserted that, therefore, self-defense and voluntary manslaughter were mutually exclusive, and the instruction was inappropriate. The trial court agreed with the prosecutor and denied the request. The court instructed the jury in accordance with M Crim JI 7.15 (use of deadly force in self-defense) regarding murder only, stating, "If a person acts in lawful self-defense, that person's actions are justified and he is not guilty of *murder*." (Emphasis added.) The trial court also instructed the jury, however, that defense of others was a complete defense to murder or manslaughter. In that regard, the court instructed the jury in accordance with M Crim JI 7.21 (defense of others) as follows: "If a person acts in lawful defense of another, his actions are justified and he is not guilty of *murder or manslaughter offenses*." (Emphasis added.)

In *Yeager*, our Supreme Court rejected the notion that self-defense and voluntary manslaughter were mutually exclusive. In that case, the defendant's attorney failed to request a jury instruction on voluntary manslaughter because he believed that the instruction would be inconsistent with the defendant's defense of self-defense. *Yeager*, 511 Mich at 486, 491. The attorney appeared to believe that manslaughter required an intentional act, but that self-defense required the jury to find that the defendant acted unintentionally. *Id*. at 491. Our Supreme Court determined that the attorney rendered ineffective assistance of counsel because his failure to request a voluntary manslaughter instruction was based on legally incorrect reasoning. *Id*. The Court stated that both self-defense and voluntary manslaughter required an intentional act and that "the distinction between murder and voluntary manslaughter is the element of malice, which in voluntary manslaughter is negated by the presence of provocation and heat of passion." *Id*. (quotation marks and citation omitted).

In this case, the trial court erred by denying Josey's request to instruct the jury that self-defense is a defense to voluntary manslaughter. The court's reason for denying the request, i.e., the intent elements of self-defense and voluntary manslaughter are mutually exclusive, is legally incorrect under *Yeager*. In fact, in deciding Josey's motion for a new trial, the trial court cited *Yeager* and acknowledged that it erred by denying the request, stating, "this Court now sees that it is—it was wrong." The court denied the motion, however, on the basis that the error was harmless because the jury rejected Josey's claim that he acted in defense of others. As previously stated, the trial court instructed the jury that a person is not guilty of murder or manslaughter if he acted in lawful defense of another person. In determining that its omission of the self-defense instruction was harmless, the court reasoned that in order "for the omitted instruction to have made a difference, the jury would have to simultaneously disbelieve the Defendant's argument and claim [that he feared for Fuller's and his son's lives] while believing he feared for his own." Because the jury rejected Josey's argument that he acted in defense of Fuller and his son, the court determined that "a rational jury would reject the same claims concerning himself . . . ."

We conclude that the trial court erred by denying Josey's request for the voluntary manslaughter self-defense instruction. Although the trial court determined that its error was harmless, the video of the incident fails to support the court's reasoning. The video depicts Dombrowski running toward Josey. Dombrowski did not appear to be concerned about Fuller, and his attention was not directed toward her. It is unknown whether Dombrowski was even aware that Josey's young child was in the backseat of the Jeep. Dombrowski did not give any indication that he was aware of the child's presence. Rather than focusing his attention on Fuller or the child, Dombrowski's attention was focused solely on Josey. The jury may have rejected Josey's claim that he acted in defense of Fuller and his son because, as the video shows, they were not in danger. They were safely inside the Jeep while Dombrowski's attention was on Josey outside the Jeep.[1] Therefore, the record evidence does not support the trial court's reason for determining that the omitted instruction was harmless.

---

[1] During oral argument, the prosecutor conceded that Fuller and Josey's son were not at risk of harm.

Further, the trial court's failure to provide the instruction was not harmless. Because Josey presented evidence that he acted in self-defense, he was entitled to a self-defense jury instruction. See *Leffew*, 508 Mich at 644 ("a defendant who puts forward some evidence in support of their affirmative-defense theory is entitled to an instruction on that theory."). Although the trial court instructed the jury on self-defense with respect to murder, the trial court's failure to instruct the jury on self-defense with respect to voluntary manslaughter denied Josey his constitutional right to present a defense *to the shooting*. If Josey shot Dombrowski because he honestly and reasonably believed that doing so was necessary to prevent his imminent death or great bodily harm, his actions were justified regardless of the offense he was alleged to have committed. But, the trial court's jury instructions informed the jury that it could conclude that Josey's actions were justified with respect to murder, but not with respect to voluntary manslaughter. Therefore, the instructions denied Josey his constitutional right to present a defense.

A preserved constitutional error requires reversal unless "the beneficiary of the error has established that the error was harmless beyond a reasonable doubt." *People v Sammons*, 505 Mich 31, 56; 949 NW2d 36 (2020). "A constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *People v Hyde*, 285 Mich App 428, 447; 775 NW2d 833 (2009) (quotation marks, brackets, and citations omitted). We cannot conclude that it is clear beyond a reasonable doubt that a rational jury would have convicted Josey of voluntary manslaughter absent the trial court's error. Notably, the jury acquitted Josey of second-degree murder after the trial court instructed the jury that a person's actions are justified and he is not guilty of murder if he acts in lawful self-defense. The jury was not given the same option with respect to voluntary manslaughter, and jurors are presumed to follow their instructions. *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020). The jury may have determined that Josey acted in self-defense, but that self-defense was not a defense to voluntary manslaughter. Accordingly, we reverse Josey's voluntary manslaughter conviction and remand for a new trial.

## III. FELONY-FIREARM

Josey next argues that his trial counsel rendered ineffective assistance of counsel by failing to request a self-defense instruction with respect to felony-firearm. We agree and reverse Josey's felony-firearm conviction.

Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review the legal questions de novo and the trial court's factual findings, if any, for clear error. *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). Because the trial court did not hold an evidentiary hearing, there are no factual findings for this Court to review, and our review "is limited to mistakes apparent on the record." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021) (quotation marks and citation omitted).

To establish ineffective assistance of counsel, a defendant must show "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). A defendant establishes prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id*., quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Effective assistance of counsel is presumed, "and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). "Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *Yeager*, 511 Mich at 490.

In *People v Kilgore*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 365881); slip op at 1, the jury acquitted the defendant of first-degree and second-degree murder and convicted him of CCW and felony-firearm. The defendant argued on appeal that he received ineffective assistance of counsel because his trial attorney failed to request jury instructions on self-defense and defense of others with respect to felony-firearm although counsel requested those instructions with respect to the murder charges. *Id*. at ___; slip op at 3-4. This Court determined that counsel's failure was objectively unreasonable because the defendant's defense strategy focused on self-defense and defense of others, and counsel admitted that his failure to request the instructions was not a strategic decision. *Id*. at ___; slip op at 5.

Regarding the prejudice prong of the defendant's ineffective-assistance claim, the *Kilgore* Court concluded that it was reasonably probable that the result of the proceeding would have been different but for defense counsel's error. *Id*. at ___; slip op at 5. The Court noted that the jury returned inconsistent verdicts by acquitting the defendant of murder, but convicting him of a charge predicated on his commission of murder. While the Court recognized that inconsistency alone was insufficient to call into question the validity of a conviction, it stated that when jury instructions provide a defense to a charge of which the defendant is acquitted, but a jury-instruction error forecloses the same defense on a related charge of which the defendant is convicted, "the probability that the conviction resulted from jury confusion rather than jury choice is too high to ignore." *Id*. at ___; slip op at 5. Thus, the Court vacated the defendant's felony-firearm conviction and sentence. *Id*. at ___; slip op at 6.

In the instant case, it does not appear that trial counsel's failure to request a self-defense jury instruction with respect to felony-firearm constituted sound trial strategy. In fact, we cannot envision a strategic reason for failing to request the instruction. Similar to *Kilgore*, defense counsel's failure to request the instruction was objectively unreasonable given that Josey asserted a defense of self-defense at trial. Further, when combined with the trial court's error regarding the voluntary manslaughter self-defense jury instruction, it is reasonably probable that the result of the proceeding would have been different. We cannot consider trial counsel's error independently from the trial court's error. Because Josey was entitled to a jury instruction informing the jury that self-defense was a complete defense to voluntary manslaughter, we must review Josey's ineffective-assistance claim in light of that error. If properly instructed, the jury may have determined that Josey acted in self-defense and acquitted him of voluntary manslaughter. If it so concluded, it likewise may have acquitted him of felony-firearm. We therefore reverse Josey's felony-firearm conviction and remand for a new trial.

## IV. CONCLUSION

The trial court denied Josey his right to present a defense to the shooting when it denied his motion for a self-defense jury instruction regarding voluntary manslaughter. Trial counsel

-6-

denied Josey his right to the effective assistance of counsel by failing to request a self-defense jury instruction regarding felony-firearm. We cannot conclude that the former error was harmless beyond a reasonable doubt or that the latter error did not prejudice Josey. As such, we reverse Josey's voluntary manslaughter and felony-firearm convictions and remand for a new trial. Considering our conclusion on those issues, we need not address Josey's remaining arguments.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle