*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

AARON DEWAYNE BROWN-JOHNSON,

Defendant-Appellant.

UNPUBLISHED
April 18, 2019

No. 341312
Wayne Circuit Court
LC No. 17-004514-01-FC

Before: JANSEN, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of second-degree murder, MCL 750.317, armed robbery, MCL 750.529, felony murder, MCL 750.316(1)(b), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. Defendant was sentenced to one to five years' imprisonment for the second-degree murder conviction, one to five years' imprisonment for the armed robbery conviction, life without parole for the felony murder conviction, one to five years' imprisonment for the felon in possession of a firearm conviction, and five years' imprisonment for the felony-firearm, second offense, conviction. We vacate defendant's second-degree murder conviction and sentence, but affirm the remainder of defendant's convictions and sentences.

## I. RELEVANT FACTUAL BACKGROUND

This case arises out of the death of Alonda Brunson, who was found dead in her home in Detroit. At the time of her death, Brunson had been renovating her home, and defendant, Brunson's cousin, had been helping her. On March 21, 2017, Brunson's fiancé, Danny Epps, became suspicious because he could not get ahold of her. Epps had last seen Brunson on March 19, 2017, and had last spoke with her on the phone on March 20, 2017. Epps called Brunson's cell phone repeatedly, and eventually it was answered by a man named Kevin Buck, who explained to Epps that he had found the cell phone in the grass outside of a party store.

Epps reached out to Brunson's brother, Alonzo Cathey, for help locating Brunson. Cathey recalled that the last time he had spoke to Brunson, she was with defendant. Epps called defendant, who told Epps that he had left Brunson's home around 1:45 p.m. on March 20, 2017,

and had not heard from Brunson since. Defendant told Epps that he had driven past Brunson's home on the morning of March 21, 2017, because he was supposed to be helping Brunson with the house. However, defendant told Epps that Brunson's car was not there, so he did not stop. Around 3:30 p.m. on March 21, 2017, Cathey accompanied Epps to the Detroit Police Department to file a missing person's report.

After leaving the police department, Epps returned home, where he waited for the police to meet him. Before the police arrived, Epps began receiving notifications on Brunson's cell phone that her credit card was being used in a potentially fraudulent transaction. When Epps received the notification, he called Detective Cheri Snow and informed her of the notification. Epps told Detective Snow that the notification reported that the transaction was at the party store, and asked Detective Snow if she could go to the party store to review any video cameras to see who was using Brunson's credit card. Since Epps was waiting on the police, he called Cathey and asked him if he would go to the party store to check it out.

Cathey did go to the party store, where he saw Brunson's car parked in the parking lot. However, Brunson was not in the car. Rather, defendant was found sitting in Brunson's car. Defendant told Cathey that he had not spoken to Brunson since the day before, but that he had found her car down the street from his home. Defendant was also in possession of Brunson's house keys and credit card. Prior to defendant being found with Brunson's car, multiple fraudulent transactions had been made on Brunson's credit cards throughout the day, including at the party store.

Shortly after Cathey found defendant at the party store, Epps and the police arrived, and the police took possession of Brunson's car and began to question defendant. Epps requested a police escort for himself and Cathey back to Brunson's home. When everyone arrived at Brunson's home, the police entered the residence, and found Brunson's body in an upstairs bedroom. Ultimately, the jury found defendant guilty of second-degree murder, armed robbery, felony murder, felon in possession of a firearm, and felony-firearm, second offense. This appeal followed.

## II. MOTION FOR DIRECTED VERDICT

Defendant first argues that the trial court erred in denying his motion for a directed verdict on the charge of felony murder because the prosecution failed to present sufficient evidence that the homicide occurred during the commission of an armed robbery or larceny. We disagree.

As an initial matter, defendant did not move for a directed verdict on the charge of felony murder, but rather, defendant moved for a directed verdict on the charge of armed robbery, arguing that there was insufficient evidence that force or violence was used during the course of a larceny. Therefore, defendant's argument is based on a faulty premise. Moreover, defendant's contention that the underlying felony to the felony murder charge was armed robbery is incorrect. The underlying felony to the felony murder charge was larceny, not armed robbery. Therefore, the relevant question on appeal is whether there was sufficient evidence to submit the charge of felony murder, with the underlying felony being larceny, to the jury.

To preserve an issue regarding the submission of a charge to the jury, the defendant must move for a directed verdict. *People v Lugo*, 214 Mich App 699, 711; 542 NW2d 921 (1995), citing MCR 6.419. Because defendant failed to move for a directed verdict on the charge of felony murder, this issue is not preserved for appellate review.

Generally, this Court reviews a trial court's decision whether to deny a motion for a directed verdict de novo. *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014). "If the evidence presented by the prosecution in the light most favorable to the prosecution, up to the time the motion is made, is insufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt, a directed verdict or judgment of acquittal must be entered." *People v Lemmon*, 456 Mich 625, 634; 576 NW2d 129 (1998). However, this Court reviews unpreserved claims for plain error. *People v Gibbs*, 299 Mich App 473, 492; 830 NW2d 821 (2013). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Gould*, 225 Mich App 79, 86; 570 NW2d 140 (1997).

The elements of first-degree felony murder are: "(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b)." *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009).

A "larceny is the trespassory taking and caring away of the property of another with felonious intent." *People v Cain*, 238 Mich App 95, 120; 605 NW2d 28 (1999). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

We conclude that there was sufficient evidence presented from which a reasonable jury could find defendant guilty of the underlying felony of larceny. Defense counsel conceded at trial that defendant used Brunson's credit card and drove her vehicle to run errands. Cell phone records established that defendant was in the area of Brunson's home on the day she was murdered. Defendant was found at a party store where Brunson's credit card had just recently been used. When defendant was found, he was sitting in Brunson's car, in possession of her car keys and one of her credit cards. Defendant also had Brunson's house keys in his possession. There was no evidence of forced entry into Brunson's home. Brunson's bank statements showed that multiple purchases had been made with her credit card on March 21, 2017. One of the transactions was an attempted purchase at Footlocker from an account associated with an email address containing defendant's name. Defendant's DNA was found on Brunson's purse and in her car. Therefore, there was sufficient evidence to find that defendant committed the predicate felony of larceny.

In regard to felony murder, defendant does not contest the first two elements of felony murder, but rather, argues that the third element cannot be established because there was no evidence presented that defendant had the intent to commit a larceny when the homicide occurred. Rather defendant argues that it is complete guesswork as to whether the larceny was committed prior to, during the commission of, or as an afterthought. "The felony-murder doctrine does not apply if the intent to steal the victim's property was not formed until after the homicide." *People v Orlewicz*, 293 Mich App 96, 111; 809 NW2d 194 (2011). "[A] murder committed during the unbroken chain of events surrounding the predicate felony is committed 'in the perpetration of' that felony." *Id*. "The murder and the felony need not be contemporaneous; rather, the defendant need only have intended to commit the underlying felony when the homicide occurred." *Id*.

Defendant's argument is without merit because a rational trier of fact could have found that defendant had the intent to commit larceny when the homicide occurred. Brunson's body was found next to the bed, where her purse was laying, turned over, with her credit cards missing. Defendant's DNA was found on the purse. An empty handgun box was also found in the room where Brunson's body was found. Brunson was still wearing her dust mask from her home renovations when she was murdered. Based on the proximity of Brunson's body to her purse and the empty handgun box, a reasonable jury could conclude that the murder occurred "during the unbroken chain of events" surrounding the larceny. *Orlewicz*, 293 Mich App at 111.

Because there was sufficient evidence to submit the charge of felony murder to the jury because, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found that the homicide was committed during the commission of a larceny.

## III. DOUBLE JEOPARDY

Defendant also argues, and the prosecution concedes, that his convictions for both first-degree felony murder and second-degree murder constituted double jeopardy. We agree.

"To preserve appellate review of a double jeopardy violation, a defendant must object at the trial court level." *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015). Defendant failed to object to his convictions for both felony murder and second-degree murder in the trial court, and therefore, the double jeopardy claim is unpreserved for appeal.

"A double jeopardy challenge presents a question of constitutional law reviewed de novo on appeal." *Ackah-Essien*, 311 Mich App at 30. Even though the issue is unpreserved, a double jeopardy issue "presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court." *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008). An unpreserved double jeopardy claim is reviewed for plain error. *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005), quoting *Carines*, 460 Mich at 763.

"The United States Constitution and the Michigan Constitution both prohibit placing a defendant twice in jeopardy for a single offense." *People v Dickinson*, 321 Mich App 1, 10; 909 NW2d 24 (2017), citing US Const, Am V; Const 1963, art 1, § 15. "These Double Jeopardy Clauses afford three related protections: (1) against a second prosecution for the same offense after acquittal, (2) against a second prosecution for the same offense after conviction, and (3) against multiple punishments for the same offense." *Dickinson*, 321 Mich App at 10. "Multiple murder convictions arising from the death of a single victim violate double jeopardy." *People v Clark*, 243 Mich App 424, 429; 622 NW2d 344 (2000).

Defendant was charged with two counts of murder based on alternative theories. Defendant was charged with first-degree premediated murder. The jury returned a verdict of guilty of the lesser offense of second-degree murder. Defendant was also charged with felony murder based on the murder of the same victim. The jury returned a guilty verdict as to felony murder. Defendant was sentenced to one to five years' imprisonment for the second-degree murder conviction, and life in prison without parole for the felony murder conviction. Therefore, because defendant received two convictions and sentences for the murder of a single victim, his double jeopardy right to be free from multiple punishments was violated. *Clark*, 243 Mich App at 429.

The appropriate remedy for multiple convictions in violation of double jeopardy is to affirm the conviction of the greater charge and vacate the conviction of the lesser charge. *Meshell*, 265 Mich App at 633-634. Therefore, we vacate defendant's conviction and sentence for second-degree murder.

We vacate defendant's second-degree murder conviction and sentence, but affirm the remainder of defendant's convictions and sentences.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher