*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARRELL DEAN DAKAN,

        Defendant-Appellant.

UNPUBLISHED
June 27, 2024

No. 365631
Newaygo Circuit Court
LC No. 2022-012977-FC

Before: RICK, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of second-degree murder, MCL 750.317,[1] and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced him to 20 to 40 years' imprisonment for second-degree murder and two years' imprisonment for felony-firearm. We affirm.

## I. FACTUAL BACKGROUND

Defendant was convicted in relation to the shooting death of his adult son, Joshua Dakan (Joshua), in the evening hours of December 27, 2021. Defendant presented evidence that Joshua was addicted to methamphetamine and had assaulted him on two separate occasions in the weeks leading to the shooting. He raised a claim of self-defense and contended that he shot Joshua after Joshua charged at him during an argument. A witness to the shooting, Matthew Powell, provided a different account of the incident. Powell disputed that Joshua had been charging at defendant when defendant pulled the trigger, and instead claimed that Joshua was standing still and not saying anything when defendant shot and killed him. The prosecutor theorized that defendant shot Joshua in anger and in cold blood after the two got in an argument over damage that Joshua allegedly

---

[1] The jury rejected the higher offense of first-degree premeditated murder and the lesser offense of voluntary manslaughter.

-1-

caused to a truck on the property that he shared with defendant. Defendant was convicted and sentenced as earlier described. This appeal followed.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecutor failed to present sufficient evidence that he committed second-degree murder and additionally failed to adequately rebut defendant's claim of self-defense. We disagree.

"This Court reviews de novo claims of insufficient evidence, viewing the evidence in the light most favorable to the prosecution, to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010).

Regarding the sufficiency of the evidence, defendant contends that the prosecutor did not adequately support the claim that defendant was guilty of second-degree murder because no evidence was presented to show that he acted with malice. In *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007), the Michigan Supreme Court stated that "the elements of second-degree murder are as follows: (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death."[2] "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). See also *People v Baskerville*, 333 Mich App 276, 284; 963 NW2d 620 (2020). "A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999). "Malice may also be inferred from the use of a deadly weapon." *Id*.

"Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *Bennett*, 290 Mich App at 472. Because it is difficult to prove a person's state of mind, minimal circumstantial evidence is sufficient to establish intent. See, e.g., *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008) ("Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to establish a defendant's intent to kill."). Also, in analyzing a claim of insufficient evidence, this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses. *Id*. at 222. Conflicts in the evidence are resolved in the prosecutor's favor. *Id*.

---

[2] We note that, in *People v Spears (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 357848); slip op at 14, lv pending 997 NW2d 204 (Mich, 2023), this Court stated that " 'without justification or excuse' " is not a true element of second-degree murder" but is "[i]nstead . . . part of the 'cluster of ideas' about the act of murder that our Legislature adopted in 1846 by enacting the homicide statutes."

Sufficient evidence of malice was presented in this case. Defendant used a deadly weapon and "intentionally set in motion a force likely to cause death or great bodily harm." *Carines*, 460 Mich at 759. Further, defendant admitted that he intentionally pointed a gun at Joshua and pulled the trigger. Based on these facts, the jury had adequate evidence from which to conclude that defendant had the requisite intent to commit second-degree murder. Additionally, and contrary to defendant's undeveloped suggestion on appeal, the evidence presented did not require the jury to reach the conclusion that defendant merely committed voluntary manslaughter. Defendant went into his trailer, came out, and then shot Joshua. That he had time to consider not pulling the trigger suggests that he did not commit voluntary manslaughter. See, e.g., *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012) (stating that voluntary manslaughter requires passion and the absence of a lapse of time to control it).

Furthermore, the prosecution presented sufficient evidence to rebut defendant's claim of self-defense. Effective October 1, 2006, the Legislature enacted the Self-Defense Act (SDA), MCL 780.971 *et seq.,* which "codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *People v Dupree,* 486 Mich 693, 708; 788 NW2d 399 (2010). By its express terms, the SDA did "not diminish an individual's right to use deadly force or force other than deadly force in self-defense or defense of another individual as provided by the common law of this state in existence on October 1, 2006." MCL 780.974. In pertinent part, MCL 780.972 states:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

"In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013). After a defendant " 'satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt.' " *People v Rajput*, 505 Mich 7, 11; 949 NW2d 32 (2020), quoting *Dupree*, 486 Mich at 712.

At trial, Powell testified that defendant and Joshua had argued. Defendant went inside his trailer, and Joshua threw a round white object at the trailer. Powell did not know what the object was, but it made a clanging noise when it hit the trailer. Powell said that Joshua did not threaten defendant when he threw the object, and simply stood outside the trailer, about 15 feet from the door. Defendant testified that he did not recall hearing anything hitting his trailer.

Defendant subsequently exited the trailer holding a rifle and started walking down the stairs. Powell testified that when Joshua saw defendant, he "started back pedaling" around the front of the trailer toward a shed. Powell testified that defendant "put [the rifle] up and aimed it at

-3-

[Joshua] when he got to the front of the trailer." Powell said that Joshua did not "go after" defendant. He said that, then, Joshua said, " 'Just fucking shoot me, then,' " and defendant asked, " 'You really want me to?' " Powell testified that defendant was still pointing the gun at Joshua, and Powell heard a click. According to Powell, defendant said, " 'Oh, there must not have been one in there.' " Powell indicated that defendant raised the gun up a bit and "sort of did something with it," pointed it again at Joshua, and then a shot went off. Powell said that Joshua was "like scared" and agreed that he was "like turned," with his knees "a little bent." Powell stated that Joshua was not yelling at or threatening defendant and did not have anything in his hands.

The pathologist testified that the bullet traveled from the victim's back to his front and from right to left. She said that the victim could not have sustained this wound while facing the shooter. She also said that the bullet trajectory was consistent with the victim having been bent over.

This evidence was sufficient to disprove defendant's theory that he acted in self-defense. Although defendant's recounting of the circumstances of the shooting differed from Powell's, the jury was the arbiter of credibility. *Unger*, 278 Mich App at 222. Reversal on the basis of insufficient evidence is unwarranted. The murder conviction was adequately supported by proof beyond a reasonable doubt, and no due-process violations occurred. *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970).

## B. REBUTTAL TESTIMONY

Defendant next contends that the trial court erred by allowing the jury to hear rebuttal testimony from defendant's ex-wife and stepson that defendant had assaulted them. He additionally contends that his trial attorney rendered ineffective assistance of counsel by failing to object to the testimony. We agree that the evidence was erroneously admitted, and that defense counsel was ineffective for failing to object. However, because the outcome of the case would not have been different had the evidence been excluded, we find that any error was harmless.

Defendant did not properly preserve his evidentiary issue by objecting in the trial court. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001) ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."). This Court reviews unpreserved issues for plain error affecting substantial rights. *Carines*, 460 Mich at 763. Under the plain-error doctrine, reversal is warranted if a "clear or obvious" error occurred that "affected the outcome of the lower court proceedings." *Id*. Even if this standard is satisfied, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, citation, and alteration omitted).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge must first find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A court's findings of fact are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*.

-4-

To obtain relief on the basis of ineffective assistance of counsel, a party "must show that counsel's performance fell short of [an] . . . objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the . . . trial would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks, citation, and brackets omitted); see also *Strickland v Washington*, 466 US 668, 690, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ackley*, 497 Mich at 389 (quotation marks and citation omitted).

Defendant challenges rebuttal evidence introduced by the prosecutor, indicating that he shoved his stepson and caused him to fracture the bones in his face, and that he kicked his ex-wife and broke her rib. In discussing the challenged evidence, defendant contends that the primarily applicable evidentiary guideline was MCL 768.27b, which states, in relevant part:

> (1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

Defendant contends that the evidence was irrelevant under MRE 401 and also inadmissible under MRE 403, which stated that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"[3]

Conversely, the prosecutor contends that MCL 768.27b was not applicable because defendant was tried for murder and not domestic violence. The prosecutor's contention is incorrect. Subsection (6) of the statute states:

> (a) "Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:
>
> (*i*) Causing or attempting to cause physical or mental harm to a family or household member.
>
> (*ii*) Placing a family or household member in fear of physical or mental harm.

\* \* \*

---

[3] The Michigan Rules of Evidence were substantially amended and restyled on September 20, 2023, effective January 1, 2024, to be consistent with the Federal Rules of Evidence. See 512 Mich lxiii (2023). This opinion refers to the rules in effect at the time of defendant's trial, which preceded the amendments.

(b) "Family or household member" means any of the following:

(*i*) A spouse or former spouse.

(*ii*) An individual with whom the person resides or has resided. [MCL 768.27b(6).]

It is not disputed that defendant used to live with his ex-wife, his stepson, and Joshua, and it goes without saying that murdering someone is an instance of "[c]ausing . . . harm[.]" MCL 768.27b(6)(a)(*i*). Moreover, this Court has concluded that the statute applied in a case involving a charge of second-degree murder. See *People v Purdle (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 6 n 5, lv pending. Thus, the prosecutor is incorrect on this point.

However, the statute was inapplicable for alternate reasons. First, the prosecutor did not file the requisite notice. Subsection (2) of the statute states:

If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered, to the defendant not less than 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown. [MCL 768.27b(2).]

Here, the prosecutor merely filed a "memorandum of law" seven days before trial, in which he contended that certain unspecified other acts might be admissible under MRE 404 and 405, in light of the fact that defendant was claiming self-defense and might assert that he had a character trait of peacefulness. The prosecutor argued as follows:

If the defendant introduces evidence of his peaceful nature, the prosecution may rebut the same. If the defendant introduces evidence that the victim is aggressive, the prosecution may rebut that evidence by presenting evidence that the victim is peaceful and/or may introduce evidence that the defendant has a trait of character for aggressiveness.

Nothing about this memorandum of law indicated that it was intended to serve as notice to defendant of the prosecutor's intention to introduce other-acts evidence.

Additionally, the evidence at issue was temporally remote from the shooting involving Joshua. Subsection (4) of the statute states:

Evidence of an act occurring more than 10 years before the charged offense is inadmissible under this section unless the court determines that 1 or more of the following apply:

(a) The act was a sexual assault that was reported to law enforcement within 5 years of the date of the sexual assault.

(b) The act was a sexual assault and a sexual assault evidence kit was collected.

(c) The act was a sexual assault and the testing of evidence connected to the assault resulted in a DNA identification profile that is associated with the defendant.

(d) Admitting the evidence is in the interest of justice. [MCL 768.27b(4).]

The other act pertaining to defendant's stepson occurred in 2004, and it appears from the record that the incident involving defendant's ex-wife occurred in the 1990s or early 2000s. Sexual assaults were not at issue in this case, so the only possible basis for admitting the evidence of the other acts was MCL 768.27b(4)(d). However, because the prosecutor did not seek to admit the evidence under the statute, the trial court did not engage in any analysis regarding whether admitting the evidence would serve the interest of justice. It is not this Court's role to be the first to engage in such a discretionary analysis. In any event, defendant's argument that the evidence was inadmissible under MCL 768.27b because of subsection (1)'s explicit reference to relevancy and to MRE 403 is misplaced in light of the fact that the statute was not even applicable in the first instance.

The prosecutor alternatively argues that the evidence in question was admissible under MRE 404(a) and 405 because it was pertinent to defendant's theory of self-defense. At the time of trial, MRE 404(a) provided, in pertinent part:

**Character Evidence Generally**. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) *Character of Accused*. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same; or if evidence of a trait of character of the alleged victim of the crime is offered by the accused and admitted under subdivision (a)(2), evidence of a trait of character for aggression of the accused offered by the prosecution;

(2) *Character of Alleged Victim of Homicide*. When self-defense is an issue in a charge of homicide, evidence of a trait of character for aggression of the alleged victim of the crime offered by an accused, or evidence offered by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a charge of homicide to rebut evidence that the alleged victim was the first aggressor . . . .

MRE 405 provided:

(a) **Reputation or Opinion**. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct.

(b) **Specific Instances of Conduct**. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct. [Emphasis added.]

On appeal, the prosecutor relies on out-of-state caselaw regarding whether a victim's character is an essential element of a claim of self-defense. Through extrapolation, he contends that the challenged evidence was admissible under MRE 405 because specific instances in which defendant was the initial aggressor are directly related to an element of defendant's claim of self-defense. This contention is not supported by Michigan law. In discussing MRE 405 in relation to a claim of self-defense, this Court has expressly stated that "[t]he victim's character is not an essential element of defendant's self-defense claim" and concluded that "specific instances of conduct were properly excluded on that basis." *People v Orlewicz*, 293 Mich App 96, 103-104; 809 NW2d 194 (2011). By analogy, a defendant's character is also not an essential element of a self-defense claim. In addition, in *People v Roper*, 286 Mich App 77, 88, 99; 777 NW2d 483 (2009), the defendant raised a claim of self-defense and asserted that the victim had punched him, but this Court, in discussing MRE 405 and the admissibility of evidence of specific instances of the defendant's conduct, stated that the case "did not involve a charge or defense where defendant's character was an essential element."

The prosecutor's contention that MRE 405(b) allowed for admission of the testimony in question is similarly inaccurate. The *Roper* Court discussed another scenario whereby specific instances of a defendant's conduct could be introduced by way of rebuttal witnesses (such as occurred here). It stated:

[A] prosecutor may present rebuttal evidence concerning specific instances of conduct to prove a defendant's character, notwithstanding the limitations imposed under MRE 405, when all the following are true: (1) the defendant places his or her character at issue through testimony on direct examination; (2) the prosecution cross-examines the defendant about specific instances of conduct tending to show that the defendant did not have the character trait he or she asserted on direct examination; (3) the defendant denies the specific instances raised by the prosecution in whole or in part during the cross-examination; and (4) the prosecution's rebuttal testimony is limited to contradicting the defendant's testimony on cross-examination. [*Roper*, 286 Mich App at 105.]

But defendant did not assert during his direct examination that he had a character trait of peacefulness. In fact, at one point, in connection with testifying about calling the police on Joshua, defendant admitted that he got "belligerent and angry . . . " The present case does not compare to the situation in *Roper*, wherein the defendant testified on direct examination that he was not the type of person to be violent. *Id*. at 94-96, 105. The *Roper* test was not satisfied.

One could potentially argue that the challenged evidence was generally admissible to prove intent under MRE 404(b)(1), which stated:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity,

intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

But even if we were to assume without deciding that the evidence was admissible under this subrule, MRE 404(b)(2) states:

> The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

The prosecutor did not advance any theory of admissibility under MRE 404(b), and instead relied on an ultimately faulty argument about MRE 404(a) and 405, the general guidelines applicable to a case involving self-defense, and the possibility that defendant would assert that he had a character trait of peacefulness. Further, the memorandum of law was filed only seven days before the start of trial.

Given that the requirements of the various evidentiary statutes and rules were not satisfied, and given that the prosecutor did not advance a persuasive or applicable argument below for admission of the evidence, we conclude that a clear or obvious error occurred when the evidence was introduced, *Carines*, 460 Mich at 763, and that trial counsel acted below an objective standard of reasonableness by failing to object to it, *Ackley*, 497 Mich at 389. However, for reversal to be warranted under the plain-error doctrine or the test for ineffective assistance of counsel, there must at least be a reasonable probability that the error was outcome-determinative. *Id*.; *Carines*, 460 Mich at 763.

We hold that there was not for two reasons. First, even if the challenged evidence had been excluded, the jury would still have heard evidence of defendant's general tendency toward violence, as allowed by MRE 404(a)(1) and 405(a). For example, defendant's ex-wife testified that defendant smashed items in their home, shot a gun in the house, and threatened to kill the family dog. She said that defendant hit Joshua in the face and threatened him with a baseball bat. Defendant does not challenge this additional testimony on appeal. Additionally, during cross-examination, defendant testified, "I remember three tough incidences with Josh. One was a spanking, another one involved a shotgun, and another one involved a spanking with a broom . . . handle." Defendant agreed that he recalled being arrested "for domestic violence for striking Josh in the mouth when he was a 15-year-old boy[.]" Defendant also admitted that, in 2007, he may have said to the police that Joshua was choking him and that he was going to get his gun. He admitted that his guns were taken away at the time. Defendant also admitted being "overbearing" toward his stepson. He does not raise an appellate challenge to any of the aforementioned testimony elicited on cross-examination. Thus, the jury was ultimately informed, without

objection and without challenge on appeal, about defendant's reputation for violence, and also about specific acts of violence.

Second, and perhaps more importantly, the physical evidence presented in this case generally supported the notion that defendant shot Joshua while his back was turned. This was strong evidence supporting defendant's guilt of second-degree murder and disproving defendant's theory of self-defense. "Evidentiary error will not merit reversal unless it involves a substantial right and after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). On this record, we are unconvinced that the outcome of this case would have been different had the evidence been excluded. Defendant has not shown entitlement to relief.

Affirmed.

/s/ Michelle M. Rick
/s/ Kathleen Jansen